UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                                    Chapter 11

THE MOTORCYCLE EXCELLENCE                Case No. 06-41196-ess
GROUP, INC.,

                Debtor.

----------------------------------------------------------------x

THE MOTORCYCLE EXCELLENCE
GROUP, INC.,

                Plaintiff,                    Adv. Pro. No. 06-1258-ess

    -against-

BMW OF NORTH AMERICA, LLC,

                Defendant.

----------------------------------------------------------------x

MEMORANDUM DECISION ON CROSS-MOTIONS
FOR PARTIAL SUMMARY JUDGMENT

Appearances:

Tracy L. Klestadt, Esq.                          John R. Skelton, Esq.
Klestadt & Winters, LLP                          Bingham McCutchen LLP
Attorneys for The Motorcycle                     Attorneys for BMW of North
  Excellence Group, Inc.                           America, LLC
292 Madison Avenue                               150 Federal Street
New York, NY 10017                               Boston, MA 02110

BMW of North America, LLC ("BMW"), the defendant in this adversary proceeding (the "Adversary Proceeding") moves for partial summary judgment (the "Motion for Summary Judgment") dismissing the first and second claims for relief asserted in the complaint (the "Complaint") of The Motorcycle Excellence Group, Inc. d/b/a Precision Motorcycles, the debtor and debtor in possession in the above captioned Chapter 11 case (the "Debtor").  In the First Claim for Relief, the Debtor seeks a determination that the Motorcycle Dealer Agreement entered into by the Debtor and BMW and any ancillary agreements in which the Debtor has an interest (the "Dealer Agreement") are property of the Debtor's estate.  In the Second Claim for Relief, the Debtor seeks a determination that the Dealer Agreement is valid and enforceable by the Debtor against BMW.  Complaint ¶¶ 51-59.  BMW substantially denies the allegations set forth in the Debtor's First and Second Claims for Relief.  Answer ¶¶ 51-59.  The Debtor opposes BMW's Motion for Summary Judgment, and seeks partial summary in its favor on the First and Second Claims for Relief (the "Debtor's Cross Motion").

The matter came before the Court at a hearing on August 14, 2006, at which counsel for the Debtor and BMW appeared and were heard.  After consideration of the submissions, the arguments of counsel, and the record before the Court, for the reasons set forth below, BMW's Motion for Summary Judgment is denied, and the Debtor's Cross Motion for Summary Judgment is granted.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A).  The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable hereby by Bankruptcy Rule 7052.

## Background

On November 18, 2005 (the "Petition Date"), the Debtor, a New York corporation,  filed

a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York

located at Central Islip, New York.  The Debtor's Chapter 11 case was assigned to Hon. Melanie

L. Cyganowski.  By order dated April 20, 2006, the Debtor's Chapter 11 case and this Adversary

Proceeding was transferred from Chief Judge Cyagnowski to Hon. Elizabeth S. Stong.  *See*

Adversary Docket, Entry 23.

The Debtor continues to operate and manage its business and property as a debtor in

possession in accordance with 11 U.S.C. §§ 1107 and 1108.  The Debtor alleges that it is a

franchised motor vehicle dealer of BMW products, including motorcycles, and parts, and also

provides services related to BMW motorcycles.  Complaint ¶¶ 10, 11.  The Debtor is one of

approximately 148 BMW motorcycle dealers in the United States.  Complaint ¶ 15, Answer ¶ 15.

*The Relationship Between the Debtor and BMW*

Prior to the Petition Date, on August 24, 1984, Rotondi Industries, Corp. ("Rotondi

Industries"), the Debtor's predecessor, and BMW entered into a Motorcycle Dealer Agreement

for the sale and repair of BMW motorcycles, parts, and accessories, including the performance of

warranty repairs for BMW motorcycles.  Complaint ¶ 13, Answer ¶ 13.  The Dealer Agreement

incorporates by reference the Dealer Operating Requirements Agreement (the "DORA").

Amended Affirmation of Gaston Streiger dated July 17, 2006 (the "Streiger Affirm.") ¶ 2, Exh.

A (DORA).  The Dealer Agreement was renewed annually from 1984 to August 2005.

Complaint ¶ 16, Answer ¶ 16.

The DORA requires the Debtor to, among other things, maintain a floor plan line of credit in the amount of $230,000.  Streiger Affirm. ¶ 3, Exh. A (DORA at p. 5).  BMW asserts that the Debtor has not maintained a floor plan line of credit since 2000.  Streiger Affirm. ¶ 3.

Section 11.03 of the Dealer Agreement provides that BMW has the right to terminate the Dealer Agreement if any of the following situations continues to exist thirty days after BMW has sent written notice to the dealer:

(b)     Impairment of the reputation or financial standing of Dealer . . .

(d)     Any substantial breach or violation of any material obligation or obligations of Dealer contained in this Agreement; . . .

(f)     Any reduction in value of the Products or any act on the part of the Dealer, including, without limitation, the existence of any liens or encumbrances upon the Products, which to any degree imperils the prospect of full performance or satisfaction of the Obligations of the Dealer to BMWNA; or any change in the financial or other condition of Dealer as in the opinion of BMWNA reasonably impairs BMWNA's security or increases its risk hereunder.

Streiger Affirm. ¶ 12, Exh. A (Dealer Agreement).

By letter dated July 7, 2005, BMW notified Arthur Rotondi, the principal of the Debtor, that the Debtor was in material breach of certain of its obligations under the Dealer Agreement (the "Notice of Default").  Complaint ¶ 25; Streiger Affirm. ¶ 10, Exh. I (Notice of Default dated July 7, 2005).  The Notice of Default lists the following alleged defaults by the Debtor:

1.     <u>Failure to Submit Financial Information</u>.  Section 6.03 of the Dealer Agreement states that "Dealer agrees to furnish BMWNA, at reasonable times, financial reports and other financial data, to enable BMWNA to determine Dealer's financial responsibility."  The Dealer Agreement also requires that the Dealer submit "Dealer's financial statements for each fiscal year no later than ninety (90) days following close of Dealer's fiscal year."  Additionally, the DORA requires that the Dealer furnish annual financial statements. . . .  Despite repeated oral and written requests by BMWNA, Dealer has failed to submit financial statements to BMWNA

3

. . . .

2.  <u>Financial Impairment and Lack of Working Capital</u>.  Section 6.03 of the
    Dealer Agreement states that "Dealer at all times shall maintain for its
    operations . . . adequate working capital in order to fulfill its
    responsibilities under this Agreement."  In addition, Section 11.03 of the
    Dealer Agreement permits termination in the event of "[i]mpairment of the
    . . . financial standing of Dealer."  Dealer appears to lack the working
    capital necessary to fulfill its sales and service obligations under the
    Dealer Agreement, and appears otherwise financially impaired.  For
    example, Dealer has been unable to establish a suitable line of credit or
    floorplan as required by the DORA to enable it to purchase BMW
    products with regularity and in quantities sufficient to allow it to carry out
    those obligations. . . .

3.  <u>Failure to Maintain Floorplan</u>.  Page 2, Section 2 of the DORA states,
    "Dealer agrees to maintain a minimum, unrestricted Wholesale Floorplan.
    The required amount is: <u>$234,000</u>."  Dealer has failed to maintain the
    minimum required floorplan. . . .

4.  <u>Failure to Maintain Adequate Personnel</u>.  Section 5.01 of the Dealer
    Agreement states that "Dealer at all times shall have competent and
    adequate personnel to sell and service the Products in a manner reasonably
    satisfactory to BMWNA."  For some time, Dealer has failed to maintain
    adequate personnel to manage the day-to-day operations of the dealership,
    as Dealer has itself acknowledged on multiple occasions in the past. . . .

5.  <u>Failure to Maintain Adequate Inventory</u>.  Section 5.06 of the Dealer
    Agreement states that "Dealer agrees to maintain at its Location . . . a
    reasonable inventory of the Products which is adequate to meet the current
    and anticipated demand in the market area served by Dealer's Location."
    Dealer has failed to maintain a reasonable inventory of new BMW
    motorcycles at its location necessary to properly serve the local market. . .
    .

6.  <u>Failure to Comply with Corporate Identity Requirements</u>.  Page 8 of the
    DORA requires Dealer to comply with applicable BMW corporate identity
    guidelines.  These guidelines are set forth in the DORA and in the BMW
    Corporate ID manual.  Dealer has failed to comply with these corporate
    identity requirements. . . .

7.  <u>Failure to Exert Best Efforts to Vigorously Promote and Sell BMW
    Products</u>.  Section 6.01 of the Dealer Agreement states, "Dealer agrees to
    and shall use its best efforts to vigorously promote and sell the Products at

> retail, and shall continuously work to increase the market for the Products
> in the area served by Dealer's Location.  Dealer agrees to maintain a fully
> qualified sales organization and to conduct a continuing program of
> quality advertising . . . and sales promotion activities for the Products. . .
> ."  Dealer has failed to carry out these obligations.  On average during
> 2003 and 2004, Dealer retailed <u>fewer than two new motorcycles per
> month</u> in its Area of Responsibility. . . .  Plainly, this is unacceptable sales
> performance and is far below the Sales Planning Guide . . . for Dealer's
> Location. . . .

Streiger Affirm., Exh. I (Notice of Default dated July 7, 2005) (emphasis in original).

In accordance with the Dealer Agreement, the Notice of Default provided the Debtor

with thirty days to cure the asserted defaults.  *Id.*  BMW asserts that the Debtor did not contact

BMW or cure the defaults during the thirty days.  Streiger Affirm. ¶ 11.

In August 2005, BMW was served with a tax compliance levy (the "Tax Levy"), which

stated that the New York State Department of Taxation and Finance had obtained a judgment

against Rotondi Industries in the amount of $221,769.61.  Streiger Affirm. ¶ 15, Exh. K (Tax

Levy dated August 5, 2005).  The Tax Levy required BMW to turn over to New York State any

personal property in its possession in which Rotondi Industries had an interest, including any

debts owing to BMW by Rotondi Industries.  *Id.*  On August 15, 2005, BMW wrote to Mr.

Rotondi advising him that BMW had received, and would comply with, the Tax Levy.  Streiger

Affirm., Exh. L (letter dated August 15, 2005, from Gaston Streiger to Arthur Rotondi).

On August 16, 2005, BMW gave notice to the Debtor that the defaults under the Dealer

Agreement had not been cured, and that the Dealer Agreement would be terminated.  Complaint

¶ 27; Answer ¶ 27; Streiger Affirm., Exh. J (the "Notice of Termination").  As required under

New York law, the effective date of the termination was ninety days from the Debtor's receipt of

the Notice of Termination, or November 16, 2005.[1]  Complaint ¶ 8; Streiger Affirm. ¶ 11, Exh. J

(Notice of Termination dated August 16, 2005).  The Notice of Termination lists nine default

provisions of the Dealer Agreement and the DORA:

- failure to submit financial information to BMW (Section 6.03 of the Dealer Agreement);

- financial impairment and lack of working capital (Section 6.03 of the Dealer Agreement);

- the dealer becoming insolvent or unable to pay its debts and being subject to execution of judicial process (Section 11.02 of the Dealer Agreement);

- failure to comply with state tax laws (Section 5.05 of the Dealer Agreement);

- failure to maintain a floor plan (DORA);

- failure to maintain adequate personnel (Section 5.01 of the Dealer Agreement);

- failure to maintain adequate inventory (Section 5.06 of the Dealer Agreement);

- failure to comply with corporate identity requirements (DORA); and

- failure to exert best efforts to vigorously promote and sell BMW products (Section 6.01 of the Dealer Agreement).

Steiger Affirm. ¶¶ 11-12, Exh. J (Notice of Termination).

*The Prepetition Litigation*

On November 14, 2005, two days before the effective date of the Dealer Agreement

---

[1]  Pursuant to Section 463(2)(d)(1) of the Franchised Motor Vehicle Dealer Act (the "New York Dealer Act") contained in New York's Vehicle & Traffic Law, Article 17-A, §§ 460 *et seq.*, "[a] franchisor shall notify a franchised motor vehicle dealer, in writing, of its intention to terminate . . . the franchise of such dealer at least ninety days before the effective date thereof, stating the specific grounds for such termination . . . ."  N.Y. VEH. & TRAF. LAW § 463(2)(d)(1).

termination, the Debtor commenced an action against BMW in New York state court (the "State Court Action") challenging the termination of the Dealer Agreement and seeking damages and injunctive relief.  Affirmation of Diane C. Hertz dated April 6, 2006 (the "Hertz Affirm.") ¶ 2, Exh. 1 (State Court Action Complaint).  BMW removed the State Court Action to the United States District Court for the Eastern District of New York (the "District Court").  Hertz Affirm. ¶ 2.

On November 16, 2005, the District Court, by Hon. Joanna Seybert, heard the Debtor's application for a temporary restraining order.  Hertz Affirm. ¶ 3, Exh. 2 (November 16, 2005, hearing transcript).  The District Court issued an order temporarily enjoining BMW from "terminating the [Debtor's] franchise and dealership agreement with BMW" (the "TRO") and set a preliminary injunction hearing for December 1, 2005.  Hertz Affirm. ¶ 4, Exh. 3 (TRO).  On November 18, 2005, the Debtor filed this Chapter 11 case.

On December 1, 2005, the parties appeared before Judge Seybert for the preliminary injunction hearing.  *See* Supplemental Affirmation of Diane C. Hertz in Further Support of BMW of North America LLC's Motion for Partial Summary Judgment dated August 8, 2006 ("Supp. Hertz Affirm."), Exh. A (December 1, 2005, hearing transcript).  Judge Seybert noted that the TRO would expire on December 1, 2005.  Supp. Hertz Affirm. Exh. A (December 1, 2005, hearing transcript) at 8.  In light of the Debtor's bankruptcy filing, she declined to extend the TRO and advised the parties that "if you have any issues that you want resolved, the place to be doing it would be in the Bankruptcy Court."  *Id*.

*The Postpetition Litigation*

On February 9, 2006, the Debtor commenced this Adversary Proceeding, in which it

7

seeks a declaration that the Dealer Agreement is property of the estate and is valid and

enforceable by the Debtor; an award of damages for alleged breaches of the Dealer Agreement

and violation of the New York Dealer Act; injunctive relief directing BMW to perform under the

Dealer Agreement and to comply with the New York Dealer Act; injunctive relief restraining

BMW from terminating the Dealer Agreement; and an award of damages for BMW's alleged

violation of the automatic stay.  Complaint ¶¶ 51-82.  On the same day, the Debtor filed an

application for an Order Enforcing the Rights of the Debtor Under Sections 362 and 365 of the

Bankruptcy Code and/or Granting Affirmative Preliminary Injunctive Relief Pending Trial on

the Merits (the "Debtor's Motion for a Preliminary Injunction").  Adversary Docket Entry 3.

　　　　The Court, by Chief Judge Cyganowski, held a hearing on the Debtor's Motion for a

Preliminary Injunction on February 15 and 16, 2006 (the "Preliminary Injunction Hearing"), at

which the parties appeared and were heard and testimony was taken.  Chief Judge Cyganowski

made findings of fact and conclusions of law on the record of the Preliminary Injunction

Hearing.  Hertz Affirm. Exh. 4 (Preliminary Injunction Hearing Transcript) at 114:13-24.  She

noted that "[t]he central question before the Court . . . is what is the extent of the [Dealer

Agreement], the breadth of the [Dealer Agreement], that [the Debtor] had on the date that it filed

on November 18th."  Hertz Affirm. Exh. 4 (Preliminary Injunction Hearing Transcript) at

114:25-115:1-4.  Chief Judge Cyganowski found that the Dealer Agreement was property of the

Debtor's estate and that the Dealer Agreement was an executory contract subject to assumption

or rejection under Bankruptcy Code Section 365.  Chief Judge Cyganowski further found:

> At the time, then, that the debtor filed [its] bankruptcy on November 18, 2005, the
> termination had not become effective because of the stay entered by Judge
> [Seybert] by reason of the TRO.

Consequently, the court concludes that as of the date of the filing of the bankruptcy petition, the franchise agreement . . . was not terminated.  Clearly, the record reflects the TRO, thereafter, expired December 1st; as I indicated, Judge [Seybert] acknowledged this in the hearing on that date.

But as of December 1st, the automatic stay that arises upon the filing of the petition pursuant to Section 362 was in place.  Consequently, in the absence of the Court granting an application by BMW, for the automatic stay to be lifted, in order to permit it to continue to follow through with its intention to terminate the dealer agreement, the automatic stay acted as an injunction further staying the termination of the franchise agreement. . . .

There can be no doubt, indeed, even BMW does not argue, that the franchise agreement is not property of the estate.  It falls within the parameters of Section 541 of the Bankruptcy Code.  There can be no dispute but that [Section] 362 inures with respect to property of the estate, and the franchise agreement clearly is that.

Hertz Affirm. Exh. 4 (Preliminary Injunction Hearing Transcript) at 119:8-120:17.

Having concluded that the Dealer Agreement is property of the estate, Chief Judge Cyganowski also found that the Dealer Agreement was an executory contract subject to assumption or rejection:

[T]he trustee, which in a Chapter 11 refers to [the] debtor in possession, may assume or reject an executory contract involving personal property of the debtor, which is what the franchise agreement is, at any time before the confirmation of a plan, unless request is made and granted for a hearing sooner.

Hertz Affirm. Exh. 4 (Preliminary Injunction Hearing Transcript) at 121:8-14.

At the conclusion of the Preliminary Injunction Hearing, the Court granted the Debtor's Motion for a Preliminary Injunction, and on March 2, 2006, the Court entered an Order Granting Affirmative Preliminary Injunctive Relief Pending Outcome of Adversary Proceeding (the "Preliminary Injunction Order").  Adversary Docket Entry 13.  The Preliminary Injunction Order provides that until the Adversary Proceeding is concluded, BMW may not terminate the Dealer Agreement or restrict the Debtor's ability to operate its dealership pursuant to the Dealer

Agreement. *Id.* The Preliminary Injunction Order also requires BMW to comply with all provisions of the Dealer Agreement, including selling and delivering motorcycles, parts, and accessories to the Debtor, provided that it receives payment in full in advance. *Id.*

## DISCUSSION

### *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *Hasset v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249. To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational

10

trier of fact to find for the nonmoving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

<u>*The Summary Judgment Motions*</u>
<u>*on the First and Second Claims for Relief*</u>

BMW seeks summary judgment dismissing the Debtor's First and Second Claims for Relief on grounds that, because it had "due cause" to terminate the Dealer Agreement on August 16, 2005, when the Notice of Termination was issued, the Dealer Agreement was terminated before this bankruptcy case was filed, and therefore, it is not property of the Debtor's estate nor subject to assumption by the Debtor. *See* Defendant BMW of North America, LLC's Memorandum of Law in Support of its Motion for Partial Summary Judgment dated April 7, 2006 ("BMW Memo of Law") at 1.

BMW argues that, because the Debtor did not have a right to cure its defaults upon receipt of the Notice of Termination, neither the TRO nor the automatic stay could prevent its termination of the Dealer Agreement from becoming effective. *See* BMW of North America, LLC's Reply Memorandum in Further Support of its Motion for Partial Summary Judgment, dated August 8, 2006 at 3.

The Debtor opposes BMW's Motion for Summary Judgment and seeks summary judgment in its favor on grounds that, as of the Petition Date, as a result of the TRO and automatic stay, the Dealer Agreement was not terminated and, as a result, became property of the Debtor's estate subject to assumption by the Debtor upon the filing of this bankruptcy case. *See* Debtor's Opposition to Motion for Partial Summary Judgment dated July 27, 2006 ("Debtor's Memo of Law") at 2. The Debtor also argues that BMW is not entitled to summary judgment

because, at the Preliminary Injunction Hearing, these issues were decided in the Debtor's favor.

Debtor's Memo of Law at 7-8.  The Debtor asserts that it will address whether BMW had

grounds for terminating the Dealer Agreement "in the context of calculating damages or for

curing deficiencies in the context of a motion to assume the Dealer Agreement" and that "this

issue is not relevant to this Motion."  Debtor's Memo of Law at 2.

These cross-motions for partial summary judgment pose the relatively narrow question of

whether, as of the Petition Date, the Dealer Agreement was finally and effectively terminated,

and therefore not property of the Debtor's bankruptcy estate.  *See Cisneros v. Kim (In re Kim)*,

257 B.R. 680, 685 (B.A.P. 9th Cir. 2000), *aff'd*, 35 Fed. Appx. 592 (9th Cir. 2002) (petition date

is the relevant date for determining whether property is property of the estate).

The filing of a bankruptcy petition creates an estate in property.  Section 541 of the

Bankruptcy Code provides:

> (a)     The commencement of a case . . . creates an estate.  Such estate is
> comprised of all the following property, wherever located and by
> whomever held:
>
> > (1)     . . . [A]ll legal and equitable interests of the debtor in property as
> > of the commencement of the case. . .
>
> (d)     Property in which the debtor holds, as of the commencement of the case,
> only legal title and not an equitable interest . . . becomes property of the
> estate under subsection (a)(1) or (2) of this section only to the extent of the
> debtor's legal title to such property, but not to the extent of any equitable
> interest in such property that the debtor does not hold.

11 U.S.C. §§ 541(a)(1), (d).

"Case law and the legislative history make it plain that section 541 was 'intended to be

broad and was designed to include all kinds of property, tangible or intangible. . . .'"  *Beverages*

*Int'l, Ltd. v. Schenley Affiliated Brands Corp. (In re Beverages Int'l, Ltd.),* 61 B.R. 966, 971

(Bankr. D. Mass. 1986) (quoting *Matter of Varisco*, 16 B.R. 634, 637 (Bankr. M.D. Fla. 1981)).

Courts have found that a "franchisee's contractual rights in a Franchise Agreement are generally considered property of the estate, except where said agreements have been effectively terminated prior to a debtor's filing." *In re Tudor Motor Lodge Assoc., L.P.,* 102 B.R. 936, 948 (Bankr. D.N.J. 1989). Courts have also recognized that "[a]ny right created in the estate by a franchise agreement is subject to the automatic stay provisions of § 362 of the Bankruptcy Code" and that "franchise rights which become part of the estate may be viable executory contracts capable of assumption pursuant to § 365(b)(1) of the Code." *Id*.

The Debtor's interest in the Dealer Agreement as of the Petition Date is determined by reference to state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979). This determination, in turn, requires consideration of the Dealer Agreement and the New York Dealer Act.[2]

The termination provision of the Dealer Agreement is set forth at Section 11.03. It provides:

> Except to the extent a greater notice period is required by any applicable statute, [BMW] shall have the right to terminate this Agreement, with immediate effect, if any of the following situations shall continue to exist thirty (30) days after [BMW] has sent a written notice to Dealer with respect thereto.

Streiger Affirm. Exh. A (Dealer Agreement).

The contractual termination period of the Dealer Agreement is governed by Section 463 of the New York Dealer Act. This section provides that it shall be unlawful for a franchisor:

---

[2] As noted by one commentator: "The purpose and policy behind the federal [Automobile Dealers Franchise Act], and state statutes similar to it, such as that in New York, is to establish a balance of power as between manufacturers and dealers in the automobile industry by curtailing the heavy economic advantages of the manufacturers, which allowed them to exert coercion and intimidation on their retail dealers." 8 N.Y. JUR. 2D Automobiles § 300.

13

> To terminate, cancel or refuse to renew the franchise of any franchised motor
> vehicle dealer except for due cause, regardless of the terms of the franchise.  A
> franchisor shall notify a franchised motor vehicle dealer, in writing, of its
> intention to terminate, cancel or refuse to renew the franchise of such dealer at
> least ninety days before the effective date thereof, stating the specific grounds for
> such termination, cancellation or refusal to renew.  In no event shall the term of
> any such franchise expire without the written consent of the franchised motor
> vehicle dealer involved prior to the expiration of a least ninety days following
> such written notice except as hereinafter provided.

N.Y. VEH. & TRAF. LAW § 463(2)(d)(1).

As noted above, on July 7, 2005, pursuant to Section 11.03 of the Dealer Agreement, BMW gave notice to the Debtor of its alleged defaults and provided the Debtor with thirty days to cure them.  Streiger Affirm. Exh. I (Notice of Default).  And on August 16, 2005, pursuant to the New York Dealer Act, BMW issued a Notice of Termination of the Dealer Agreement which provided that the Dealer Agreement would terminate ninety days from the Debtor's receipt of the notice, that is, on November 16, 2005.  Streiger Affirm. Exh. J (Notice of Termination).

Three events relating to the termination of the Dealer Agreement then occurred in close proximity to November 16, 2005, the termination effective date.  First, on November 14, 2005, the Debtor commenced the State Court Action, which was removed by BMW to the District Court.  Hertz Affirm. ¶ 2, Exh. 1 (State Court Action Complaint).  Second, on November 16, 2005, the District Court issued the TRO restraining BMW from terminating the Dealer Agreement.  Hertz Affirm. Exh. 3 (TRO).  And finally, on November 18, 2005, before the TRO expired, the Debtor filed its Chapter 11 petition, invoking the automatic stay of Section 362(a) of the Bankruptcy Code.

In *In re Wills Motors, Inc.*, 133 B.R. 297 (Bankr. S.D.N.Y. 1991), the court considered issues that are similar to those presented here – that is, whether a franchise agreement was

property of a debtor's estate and subject to assumption where a termination notice was sent, and the franchisor was enjoined from terminating the agreement, all before the bankruptcy case was filed.

In that case, Volvo North America Corporation ("Volvo") gave the franchisee notice of asserted material breaches of the franchise agreement and advised that if they were not cured by December 24, 1990, the agreement would be terminated. 133 B.R. at 299. On December 26, 1990, Volvo gave notice that the breaches had not been cured and that the agreement would terminate on April 2, 1991. *Id.* Before the termination became effective, the franchisee commenced a state court action against Volvo for damages and injunctive relief and obtained an injunction restraining Volvo from terminating the agreement. *Id.* Volvo removed the state court action to the district court, and on May 9, 1991, the franchisee filed for relief under Chapter 11 of the Bankruptcy Code. *Id.* The debtor's action against Volvo remained pending in the district court and that court declined to issue a preliminary injunction against Volvo, reasoning that "the debtor already had injunctive protection pursuant to the automatic stay imposed under 11 U.S.C. § 362(a)." *Id.*

Volvo argued that by giving the franchisee notice of termination effective April 2, 1991, the franchise agreement was terminated before the bankruptcy case began, and neither the state court injunction nor the automatic stay could prevent the termination from becoming effective. 133 B.R. at 299-300. The bankruptcy court disagreed, finding that as of the petition date, the debtor "continued to operate as a franchisee . . . and retained a viable interest in a [franchise agreement] which qualified as an executory contract that could be assumed and assigned within the scope of 11 U.S.C. § 365." 133 B.R. at 301-02. The court found:

15

[W]hen the debtor filed its Chapter 11 petition . . . Volvo's purported termination of the [franchise agreement] was not final and complete.  Even though no further act on the part of Volvo was required to terminate the franchise . . . a state court injunction intervened to prevent such termination.  This is not a case where an automatic stay will not toll the running of time under a contract and will not prevent the effectiveness of a previously issued termination notice.  *See Moody*, 734 F.2d at 1212-16; *Tudor Motor Lodge*, 102 B.R. at 948-49; *In re Beverages Intern., Ltd.*, 61 B.R. 966 (Bankr. D. Mass. 1986) (automatic stay does not toll the running of a specified time period). . . .

Volvo attempted to terminate the debtor's Volvo franchise on April 2, 1991 in accordance with New York law.  However, New York law intervened in the form of an affirmative injunction issued by the New York State Supreme Court restraining Volvo from terminating the franchise.  Manifestly, the affirmative injunction issued by the New York State Supreme Court prevented the mere passage of time from resulting in the termination of the debtor's Volvo franchise.  Although Volvo was not required to take any further affirmative action to terminate the franchise to achieve this result, Volvo was then subject to a negative restraint to allow the debtor to continue to act as a Volvo franchisee and to permit the debtor's Volvo franchise to continue until further order of the state court, which could, if the facts so warranted, sustain the debtor's complaint and permanently enjoin Volvo from terminating the franchise.

*Id.*

The *Wills Motors* court compared the debtor's interest in the franchise agreement to a

mortgagor's interest in a foreclosed home mortgage.  The court reasoned:

The extent of the debtor's interest in the Volvo franchise is even stronger than the debtor's interest in a foreclosed home mortgage in *In re Taddeo*, 685 F.2d 24 (2d Cir. 1982).  In the *Taddeo* case, the United States Court of Appeals for the Second Circuit held that a debtor's right of redemption after foreclosure and before sale was a sufficient property interest within the meaning of 11 U.S.C. § 541 as to allow the debtor to cure the mortgage default and reinstate the foreclosed mortgage in accordance with 11 U.S.C. § 1322(b)(5).  The debtor's interest in the mortgage in the *Taddeo* case was terminated by the judicial foreclosure judgment.  The debtor's only remaining property interest was a residual interest in the equity of redemption.  In the instant case, the state court injunction affirmatively restrained Volvo from terminating the Volvo franchise and authorized the debtor to continue to remain as a Volvo franchisee.  The debtor had more than an equity of redemption.  The debtor continued as a Volvo franchisee in accordance with New York law, as directed by the New York State Supreme Court, Westchester County.

133 B.R. at 302. The court concluded that the state court injunction "had the effect of preserving the debtor's interest in the [franchise agreement] and franchise into the debtor's Chapter 11 case." 133 B.R. at 303.

In *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.)*, 142 F.3d 631 (3d Cir. 1998), the Third Circuit Court of Appeals considered similar issues. There, the franchisor withdrew its financing and sent the franchisee a notice of termination contending that it was in default because it failed to maintain a line of credit and to purchase new vehicles. 142 F.3d at 633. One day before the effective date of termination, the franchisee requested a hearing on the propriety of the termination with the Pennsylvania Board of Vehicle Manufacturers (the "Vehicle Board"). *Id*. Before the Vehicle Board issued its decision, the franchisee filed for relief under Chapter 11 of the Bankruptcy Code. *Id*. After the petition date, the Vehicle Board decided the matter, and allowed the franchisor to terminate the franchise. *Id*. That decision was affirmed by the state court. *Id*.

Several months later, the debtor proposed a plan that provided for the sale of the franchise to obtain funds to pay creditors. 142 F.3d at 634. The franchisor objected to confirmation of the plan on grounds that, since the franchise was validly terminated in the state proceedings, it was not property of the estate available for sale. *Id*. The bankruptcy court ruled, and the district court affirmed, that the decisions rendered in the state proceedings precluded the debtor from proposing to sell the franchise through its Chapter 11 plan. 142 F.3d at 634-35.

The Third Circuit disagreed with the lower courts and recognized that "the outcome of this appeal hinges on whether the franchise agreement should have been included as an asset of the bankruptcy estate." 142 F.3d at 635. The Third Circuit noted that the franchise agreement

17

provided that termination was "'effective 60 days following the dealer's receipt of notice.'" 142 F.3d at 636 (quoting Oldsmobile Division Dealer Sales and Service Agreement). The court further noted that the state statute governing the rights of dealers and manufacturers provided that "'[a]t any time before the effective date of such termination . . . the dealer . . . may appeal to the [Vehicle Board] . . . and no such termination . . . shall become effective until final determination of the issued by the [Vehicle Board].'" *Id.* (quoting 63 PA. STAT. ANN. § 818.13(d)).

Taking these provisions together, the court found that the franchise agreement was not terminated as of the petition date, and therefore, that the franchise agreement was an asset of the bankruptcy estate. *Id.* The court further found that "the subsequent determination by the Vehicle Board and [the state court], effectively ordering the termination of the franchise agreement were made in violation of the automatic stay provisions of 11 U.S.C. § 362(a) and, thus, were not binding on the bankruptcy court." 142 F.3d at 637. The Third Circuit concluded that the franchise agreement was an asset of the bankruptcy estate, and that it could be assumed and assigned by the debtor in its Chapter 11 plan. 142 F.3d at 638.

BMW argues that *In re Policy Realty Corp.*, 2000 WL 534265 (2d Cir. May 2, 2000) (unpublished opinion), an unpublished decision of the Second Circuit Court of Appeals,[3] should

---

[3] The Local Rules of the Second Circuit Court of Appeals provide as follows with respect to the citation of "summary orders" such as *In re Policy Realty Corp.*:

> Where disposition is by summary order, the court may append a brief written statement to that order. Since these statements do not constitute formal opinions of the court and are unreported or not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court.

2d Cir. R. § 0.23.

govern the outcome of this case. BMW Memo of Law at 14-15. There, the landlord terminated

a lease with its tenant, a cooperative association, for failure to pay rent. *In re Policy Realty*

*Corp.*, 242 B.R. 121, 123 (S.D.N.Y. 1999), *aff'd*, 2000 WL 534265 (2d Cir. May 2, 2000). A

commercial subtenant commenced an action in New York state court for damages and an

injunction to prevent the termination of the prime lease. 242 B.R. at 124. That is, the party

seeking bankruptcy relief was not a party to the contract at issue in the state court proceedings.

The state court issued a temporary restraining order tolling the termination of the prime

lease until a hearing could be held. *Id*. The landlord sought to vacate the injunction in the state

appellate court, and the appellate court ruled that unless the subtenant posted a $500,000 bond,

the injunction would be dissolved. *Id*. The subtenant did not post the bond, and instead filed for

bankruptcy just before the temporary restraining order was vacated. *Id*.

The landlord then proceeded in the bankruptcy court, seeking a declaration that its

termination actions against the prime tenant were exempt from the automatic stay triggered by

the subtenant's bankruptcy case. *Id*. The bankruptcy court denied the landlord's motion, finding

that the "debtor had a property interest in the sublease as of September 9, 1998 . . . because . . .

there was a State Court stay of any termination of the [lease]." 242 B.R. at 125.

The district court disagreed, finding that the prime lease and the debtor's sublease were

not property of the estate "[b]ecause the state court merely tolled the termination . . . the Net

Lease terminated by the expiration of a 'stated term' of the lease . . . on the same day that Policy

filed its bankruptcy petition." 242 B.R. at 128. The Second Circuit affirmed the district court's

decision, on grounds that the lease was properly terminated under New York state law, and

because "the automatic stay does not prevent the running of time under a contract." 2000 WL

534265, at *3.

Here, the TRO obtained by the Debtor in the District Court enjoined BMW from terminating the Dealer Agreement. Accordingly, the Dealer Agreement remained in force beyond November 16, 2005, the effective date stated in BMW's Notice of Termination. The TRO continued through December 1, 2006, and by that date, the Debtor's bankruptcy filing had invoked the protections of the automatic stay. To similar effect, the Debtor's prepetition District Court action, in which the Debtor challenges the termination pursuant to the New York Dealer Act, remained pending, lending further support to the conclusion that the termination was not yet final and effective. As a result, the TRO and the pending District Court action had the effect of preserving the Debtor's interest in the Dealer Agreement "into the debtor's Chapter 11 case." *In re Wills Motors*, 133 B.R. at 303. And as in *Wills Motors* and *Krystal Cadillac*, as of the Petition Date, the Dealer Agreement was not terminated, and became property of the Debtor's bankruptcy estate. *See In re Wills Motors*, 133 B.R. at 302-03. *See also In re Krystal Cadillac*, 142 F.3d at 637-38.

And here, unlike in *Policy Realty*, the debtor was a party to the contract at issue – the Dealer Agreement – and that contract was not finally terminated when the Debtor sought bankruptcy relief. In addition, unlike in *Policy Realty*, there were no conditions to the District Court's TRO enjoining the termination of the contract. In *Policy Realty*, by contrast, the condition of posting a bond was set by the state appellate court, and the debtor there did not satisfy that condition. *Cf. In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 400 n.6 (S.D.N.Y. 2001). Finally, the factual context of the *Policy Realty* decision, a commercial lease arrangement among a landlord, a cooperative association, and a commercial subtenant, is far

more remote from the context presented here than that in *Wills Motors* and *Krystal Cadillac*.

## Conclusion

For all of these reasons and based on the entire record, the Court concludes that there is no genuine issue of material fact that as of the Petition Date, the Debtor's interest in the Dealer Agreement became property of its bankruptcy estate in accordance with Section 541 of the Bankruptcy Code.  Accordingly, BMW's Motion for Partial Summary Judgment is denied, and the Debtor's Cross Motion for Partial Summary Judgment is granted.  The Debtor is directed to settle an order in conformity with this Memorandum Decision.

Dated: Brooklyn, NY
      September **6**, 2006


                    *s/Elizabeth S. Stong*
                    ELIZABETH S. STONG
                    UNITED STATES BANKRUPTCY JUDGE